520 S.E.2d 820

**MGC MANAGEMENT OF CHARLESTON, INC., Rholand and Sheila Michele as Co–Personal Representatives of the Estate of Karen Elizabeth Michele, Marshall Walker and Nationwide Mutual Insurance Company, Appellants,**

v.

**KINGHORN INSURANCE AGENCY, Acceptance Insurance Company and The Kimbrell Company, Inc., Defendants,**

of whom Acceptance Insurance Company and The Kimbrell Company, Inc. are Respondents.

No. 3027.

Court of Appeals of South Carolina.

Heard May 13, 1999.

Decided July 26, 1999.

---

544

Carl E. Pierce, II, and Allan P. Sloan, III, both of Hood Law Firm, of Charleston, for appellant.

Jon L. Austen and Sean K. Trundy, both of Pratt–Thomas, Pearce, Epting & Walker, of Charleston, for respondents.

Charles R. Norris, of Nelson, Mullins, Riley & Scarborough, of Charleston, for defendant Kinghorn.

HUFF, Judge:

In this insurance case, appellants, MGC Management of Charleston, Inc. (MGC), Rholand and Sheila Michele as Co–Personal Representatives of the Estate of Karen Elizabeth Michele, Marshall Walker and Nationwide Mutual Insurance Company seek coverage from Acceptance Insurance Company

(Acceptance) under a commercial general liability insurance policy issued to MGC. The circuit court granted respondents, Acceptance and The Kimbrell Company, Inc. (Kimbrell), summary judgment on the issue, holding the policy's automobile exclusion barred MGC from coverage. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

MGC owns and operates Mesa Grille restaurant in Charleston, South Carolina. Acceptance insured MGC on a policy MGC obtained through Kinghorn Insurance Agency and Kimbrell Company.

On August 9, 1994, an MGC employee, Dennis Monkus, was returning to the restaurant in his personal automobile after catering a soccer game. Monkus struck a car driven by Marty Walker, and killed Walker's passenger, Karen Elizabeth Michele. Monkus was uninsured at the time of the accident. Nationwide provided uninsured coverage in the amount of $500,000 on the car Monkus struck.

Rholand and Sheila Michele, as co-personal representatives for Ms. Michele's estate, sued MGC and Monkus in federal district court for wrongful death, seeking damages for mental shock and suffering, wounded feelings, grief, sorrow, loss of companionship, and loss of society. The Micheles did not bring a survival action. A jury awarded the Micheles $1,000,000 against Monkus and MGC. By agreement between the Micheles and Walker, Nationwide paid Walker $54,369.55 and the Micheles $445,630.45.

Appellants subsequently sued Acceptance, Kinghorn, and Kimbrell alleging negligent failure to provide MGC insurance covering automobile liability, negligent misrepresentation that the policy included automobile liability insurance, and seeking reformation of the policy to include automobile liability insurance based on mutual mistake of the parties. Appellants subsequently amended their complaint to alternatively allege MGC's policy actually provided coverage and Acceptance, in bad faith, breached it's contractual duty to defend and indemnify MGC.

The policy provided coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance

applies." The policy excluded coverage under exclusion 2(g) for " '[b]odily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured."

Both appellants and respondents filed motions for partial summary judgment. Appellants argued exclusion 2(g) was inapplicable to the present case because "personal injuries" were sought but only "bodily injuries" were excluded. Respondents countered that, reading the policy as a whole, the policy clearly did not provide coverage for damages resulting from bodily injury arising from the use of an automobile.

The circuit court granted respondents summary judgment on the coverage issue, finding the policy's 2(g) exclusion barred coverage for appellants' claims. Specifically, the circuit court found the policy was unambiguous and, reading the insuring agreement and exclusion together, clearly provided the insurance contract did not apply to injuries arising from the use of an automobile. The circuit court affirmed its decision upon reconsideration, amending the order only to delete reference to the parties' expectations. Appellants appeal. We affirm.

## STANDARD OF REVIEW

Summary judgment is appropriate when it is clear there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *State Farm Fire & Casualty Co. v. Breazell*, 324 S.C. 228, 478 S.E.2d 831 (1996). "Where a motion for summary judgment presents a question as to the construction of a written contract, the question is one of law if the language employed by the agreement is plain and unambiguous." *Dabbs v. Cincinnati Insurance Co.*, 293 S.C. 234, 236, 359 S.E.2d 521, 522 (Ct.App.1987) (quoting *First–Citizens Bank & Trust Co. v. Conway National Bank*, 282 S.C. 303, 305, 317 S.E.2d 776, 777 (Ct.App.1984)).

Both appellants and respondents concede, at least initially, the policy is unambiguous.

## LAW/ANALYSIS

The policy provides in pertinent part:

SECTION I—COVERAGES

COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

   *    *    *

   c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

2. Exclusions.

   This insurance does not apply to

   *    *    *

   g. Aircraft/Auto or Watercraft:

   "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."

   *    *    *

SECTION V—DEFINITIONS

*    *    *

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

Appellants first contend they are entitled to summary judgment on the coverage issue as a matter of law because the exclusion provision relied upon by respondents is unambiguous and does not exclude damages for wrongful death. Specifically, they argue (1) respondents base the denial of coverage solely on exclusion 2(g) of the contract; (2) exclusion 2(g),

standing alone, is unambiguous and applies only to "bodily injuries"; (3) South Carolina law distinguishes between "bodily injuries" and "personal injuries" and the exclusion only applied to "bodily injuries," thus providing coverage for the Micheles personal injury action.

Appellants contend the deposition testimony of James Scholten, a corporate representative of Acceptance, shows the only reason coverage was denied was due to exclusion 2(g). They argue that, by virtue of Acceptance's admission that there was no other reason to deny coverage, this exclusion must be considered alone, without resort to the rest of the policy. Reading only this exclusion, they contend the policy unambiguously excludes only "bodily injury" and not "personal injury." Appellants argue, under South Carolina law, there is a distinction between "bodily injuries" and "personal injuries" and that "personal injuries" are not included within the term "bodily injuries." They argue the exclusion in 2(g) does not exclude "damages because of bodily injury," and therefore "damages because of bodily injury," such as the "personal injury" damages claimed by the Micheles, are covered.

■■■ First, we disagree with appellants' assertion that exclusion 2(g) should be read in isolation. While Mr. Scholten did testify that Acceptance was relying solely on exclusion 2(g) in denying coverage, he clearly stated that one could not simply skip straight to exclusion 2(g), but the contract must be viewed in its entirety in determining whether there is coverage. Further, the law is clear that, in construing an insurance contract, all of its provisions must be considered together. *Yarborough v. Phoenix Mutual Life Insurance Co.*, 266 S.C. 584, 225 S.E.2d 344 (1976). Presumably, all portions of a contract are inserted for a purpose and, thus, the contract must be read as a whole, giving the appropriate weight to all of its provisions. *Id.* Therefore, the court must consider the entire contract between the parties to determine the meaning of its provisions, and that construction will be adopted which will give effect to the whole instrument and each of its various parts, so long as it is reasonable to do so. *Id.*

■■■ Insurance policies are subject to general rules of contract construction. *Fritz–Pontiac–Cadillac–Buick v. Goforth*, 312 S.C. 315, 440 S.E.2d 367 (1994). This court must

enforce, not write, contracts of insurance and we must give policy language its plain, ordinary, and popular meaning. *Id.* An insurer's obligation under a policy of insurance is defined by the terms of the policy itself, and cannot be enlarged by judicial construction. *Nationwide Mutual Ins. Co. v. Commercial Bank,* 325 S.C. 357, 479 S.E.2d 524 (Ct.App.1996). It is true that ambiguous or conflicting terms in an insurance policy must be construed liberally in favor of the insured and strictly against the insurer. *Diamond State Ins. Co. v. Homestead Indus., Inc.,* 318 S.C. 231, 456 S.E.2d 912 (1995). However, if the intention of the parties is clear, courts have no authority to torture the meaning of policy language to extend or defeat coverage that was never intended by the parties. *Id.*

█  Appellants are attempting to read the exclusionary language in a vacuum. The policy, however, must be read as a whole, and the court will not look at the exclusionary clause in isolation. Considering the policy as a whole, we agree with the trial judge that the policy is unambiguous and the insurance does not apply to damages arising from the use of an automobile.

Provision 1(a) of the insuring agreement provides that Acceptance will pay those sums "the insured becomes legally obligated to pay as damages because of 'bodily injury' ... *to which this insurance applies.*" (Emphasis added). Under exclusion 2(g), the "insurance does not apply to ... '[b]odily injury' or 'property damage' arising out of the ... use ... of any ... 'auto'...." While damages because of bodily injury are normally recoverable under provision 1(c) of the policy, such damages are clearly excluded when they arise out of the use of an automobile. The distinction between "bodily injury" damages and "personal injury" damages is irrelevant, for it is the occurrence itself that is excluded from coverage, and not the type of damages. Thus, any damages flowing from the non-covered occurrence, be they bodily or personal injuries, are not covered. We further find unpersuasive appellants' argument that exclusion 2(g) does not apply because it fails to exclude "*damages because of* bodily injury," for neither does the provision exclude "bodily injury *damages.*" Rather, it excludes " '[b]odily injury' or 'property damage' " arising out of the use of an automobile, a clear indication that the

exclusion applies to the occurrence or event, and not the type of damages.[1] Because the underlying event, i.e., Ms. Michele's death arising from the use of a car, is excluded by the policy, the damages which emanate from the underlying event are excluded.

Appellants next contend that, looking at the policy as a whole, internal inconsistencies within the policy render the policy ambiguous. Accordingly, they contend they are either (1) entitled to summary judgment on the issue of coverage because the ambiguity should be resolved in their favor or (2) find respondents are not entitled to summary judgment and the issue should be remanded because a material issue of fact exists as to whether the policy provides coverage.

Appellants assert internal inconsistencies appear in the contract of insurance. They argue the policy purports to cover "damages because of bodily injury" which are defined to include "damages claimed by any person or organization for care, loss of services or death resulting at any time from the 'bodily injury.' " However, the policy later defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, in including death resulting from any of these at any time." Thus, they argue the coverage section of the policy broadens coverage to include damages resulting from "bodily injury," such as the wrongful death damages sought by the Micheles, but exclusion 2(g) refers only to "bodily injury" and not "damages because of bodily injury," thus creating an ambiguity as to which damages are excluded. We disagree.

There is nothing ambiguous about the policy language in question. In construing an insurance contract, all of the provisions of the contract must be considered together, and an ambiguity will not be created by singling out a sentence or clause. *Falkosky v. Allstate Insur. Co.*, 311 S.C. 369, 429 S.E.2d 194 (Ct.App.1993) *aff'd as modified*, 312 S.C. 210, 439 S.E.2d 836 (1993); *Yarborough, supra.* The coverage section of the policy does not broaden the definition of "bodily injury." Rather, it defines the broader term of "damages because of bodily injury," which includes personal damages such as those

---

1. Had the exclusion used the term "bodily injury damages" instead of merely "bodily injury", appellant's argument that the policy excluded only certain types of damages would be more compelling.

awarded the Micheles in the wrongful death action. As previously noted, the exclusionary language of provision 2(g) applies to the occurrence or event causing damages (in this case, operation of an automobile), although such damages would otherwise be recoverable under the policy. Thus, all damages arising from the use of an automobile, whether they are "bodily injury damages" or "damages because of bodily injury," are excluded by the provision.

In conclusion, we find the exclusionary clause unambiguously applies to bar the claim at issue here. In readily understandable language, the policy excludes all claims of damages from bodily injuries arising out of the use of an automobile. The meaning is not obscured by the individual definitions of "bodily injury" and "damages because of bodily injury."

For the foregoing reasons, the order below is

**AFFIRMED.**

HOWELL, C.J., and ANDERSON, J., concur.