**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Ard Trucking Company, Respondent,

v.

Travelers Property Casualty Company of America d/b/a
The Travelers Indemnity Company of Illinois, Appellant.

Appellate Case No. 2015-000806

———————

Appeal From Darlington County
Paul M. Burch, Circuit Court Judge

———————

Unpublished Opinion No. 2018-UP-010
Heard September 19, 2017 – Filed January 10, 2018

———————

**REVERSED**

———————

M. Dawes Cooke, Jr., and Phillip S. Ferderigos, both of
Barnwell Whaley Patterson & Helms, LLC, of
Charleston, for Appellant.

Martin S. Driggers, Sr., of Driggers & Moyd, of
Hartsville, for Respondent.

———————

**PER CURIAM:** In this civil action, Travelers Property Casualty Company of America (Travelers) appeals the circuit court's grant of summary judgment in favor of Ard Trucking Company. Travelers asserts the circuit court erred in finding a

Loss Sensitive Rate Plan (LSRP)[1] did not apply to the insurance policy it issued to Ard Trucking because (1) Ard Trucking agreed to be bound by a Workers' Compensation Insurance Plan (the Plan), which required the LSRP to apply to Ard Trucking's assigned risk policy as a matter of law; and (2) Ard Trucking had knowledge the LSRP applied to its policy.  Travelers also argues (3) the circuit court's prejudgment interest award was in error.  We reverse.

**FACTS**

South Carolina provides a workers' compensation insurance market for policies of last resort, generally referred to as assigned risk workers' compensation policies. Assigned risk policies are for high risk employers who are unable to obtain workers' compensation coverage in the voluntary market.  The South Carolina Department of Insurance (SCDOI) approved the LSRP as part of the South Carolina Workers' Compensation Assigned Risk Plan, naming the National Council on Compensation Insurance (the Council) as Plan Administrator.  The Council dictated the LSRP would be mandatory for all assigned risk insureds with a standard premium equal to or exceeding $200,000.  Additionally, the Council instructed insurers "[a]ll assigned risk policies shall be endorsed with policy endorsement WC 00 04 17 - Assigned Risk [LSRP] Notification."

Allen Ard, owner of Ard Trucking, submitted an application for an assigned risk insurance policy with Travelers.  The application contained the following clause above Ard's signature:

> By signing below I acknowledge that the [LSRP] has been explained to me or that an explanatory notice or brochure has been provided to me and I agree that I shall be bound by the terms of such plan if my estimated annual premium or preliminary physical audit premium meets or exceeds the premium eligibility requirement.

Travelers issued the policy to Ard Trucking to cover a one-year period, with an estimated annual premium of $168,000.  The policy stated the premium was subject to verification and change by audit.  The policy included eleven separate endorsements, including the Assigned Risk LSRP Notification.  The Assigned Risk LSRP Notification endorsement explained to the insured it was "issued because you may qualify to have the cost of your insurance subjected to the assigned risk

---

[1] LSRP refers to a plan that adjusts the premium on a policy, following the policy term, based upon the actual occurrence of claims.

mandatory [LSRP]."  The endorsement provided that it applied in twelve states and the District of Columbia and listed the premium eligibility for each associated state; however, South Carolina was not one of the states listed.

Ard Trucking's estimated annual premiums exceeded $200,000.  As a result, Travelers issued a replacement policy to Ard Trucking for the same coverage year, with an estimated annual premium of $262,000.  The replacement policy indicated the rating mode was LSRP and the LSRP Contingent Deposit was $52,116.  The replacement policy contained an additional endorsement, the Mandatory Assigned Risk LSRP Endorsement, which was added "to explain the rating plan and how the Assigned Risk [LSRP] premium will be determined."  The replacement policy contained the Assigned Risk LSRP Notification endorsement, identical to the one provided in the initial policy, which did not include South Carolina on the list of applicable states.  After receiving the replacement policy, Ard Trucking obtained an irrevocable letter of credit from Carolina Bank in the amount of $52,116 and permitted Travelers to draw on the letter of credit with a draft.

After the policy year ended, Travelers conducted an audit of Ard Trucking's operations to determine the final premium due to Travelers.  Travelers notified Ard Trucking it owed a final premium of $29,245, which Ard Trucking promptly paid.  Thereafter, Travelers notified Ard Trucking that it still owed $175,064 under the LSRP and warned that Travelers would draw the entire letter of credit if Ard Trucking did not pay that amount.  Ard Trucking claimed the LSRP Notification Endorsement specifically excluded South Carolina from the LSRP and refused to make the additional payment.  Consequently, Travelers drafted the letter of credit.

Ard Trucking filed a claim in the circuit court against Travelers for breach of contract and conversion.  The parties filed cross motions for summary judgment, and the circuit court held a hearing.  Afterward, the circuit court granted summary judgment to Ard Trucking.  The court found the LSRP did not apply to the policy and awarded Ard Trucking $103,844.74.  Travelers filed a Rule 59(e) motion to alter or amend the order, which the circuit court denied.  This appeal followed.

**STANDARD OF REVIEW**

"An appellate court reviews the granting of summary judgment under the same standard applied by the [circuit] court," which "may grant a motion for summary judgment 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  *Quail Hill, LLC v. Cty. of Richland*, 387 S.C. 223, 234–35, 692 S.E.2d 499,

505 (2010) (quoting Rule 56(c), SCRCP).  We are also required to view "the evidence and all inferences which can reasonably be drawn therefrom . . . in the light most favorable to the nonmoving party."  *Id.* at 235, 692 S.E.2d at 505 (quoting *Pye v. Estate of Fox*, 369 S.C. 555, 563, 633 S.E.2d 505, 509 (2006)).

## LAW/ANALYSIS

Travelers argues the LSRP applied to Ard Trucking's assigned risk insurance policy.  Both parties conceded during oral argument that the policy was unambiguous, and therefore, we need only examine the policy.  *See Beaufort Cty. Sch. Dist. v. United Nat'l. Ins. Co.*, 392 S.C. 506, 526, 709 S.E.2d 85, 95–96 (Ct. App. 2011) (stating the interpretation of an unambiguous insurance policy is for the court); *Williams v. Gov't Emps. Ins. Co.*, 409 S.C. 586, 594, 762 S.E.2d 705, 709 (2014) (providing that when an insurance policy's language is unambiguous, the language alone determines the policy's force and effect); *Way v. Way*, 398 S.C. 1, 7 n.7, 726 S.E.2d 215, 219 n.7 (Ct. App. 2012) (per curiam) (finding matters conceded at oral argument unnecessary for discussion of issue on appeal).

"Courts must enforce, not write, contracts of insurance, and their language must be given its plain, ordinary[,] and popular meaning."  *Sloan Constr. Co. v. Cent. Nat'l Ins. Co. of Omaha*, 269 S.C. 183, 185, 236 S.E.2d 818, 819 (1977).  When construing the provisions of an insurance policy, the court must examine the policy as a whole and adopt a construction that gives effect to the entire instrument and each of its various parts and provisions.  *Yarborough v. Phoenix Mut. Life Ins. Co.*, 266 S.C. 584, 592, 225 S.E.2d 344, 349 (1976).  "[T]he meaning of a particular word or phrase is not determined by considering the word or phrase by itself, but by reading the policy as a whole and considering the context and subject matter of the insurance contract."  *Id.* at 593, 225 S.E.2d at 349; *see also MGC Mgmt. of Charleston, Inc. v. Kinghorn Ins. Agency*, 336 S.C. 542, 548, 520 S.E.2d 820, 823 (Ct. App. 1999) ("[T]he law is clear that, in construing an insurance contract, all of its provisions must be considered together.").

Considering the policy as a whole and the subject matter of the insurance contract, we find the LSRP applied to Ard Trucking's assigned risk insurance policy.  The replacement policy listed the LSRP as its rating mode and listed $52,116 as the LSRP Contingent Deposit.  Although the Assigned Risk LSRP Notification endorsement stated the insured *may* qualify to have the cost of its insurance subjected to the LSRP, the Mandatory Assigned Risk LSRP Endorsement— included in the replacement policy—stated it was added to the policy "to explain the rating plan and how the Assigned Risk [LSRP] premium *will* be determined." (emphasis added).  In accordance with clearly established contract law, this court

may not read the provision in the Assigned Risk LSRP Notification Endorsement in isolation to defeat application of the LSRP. *See MGC Mgmt.*, 336 S.C. at 549, 520 S.E.2d at 823 ("[I]f the intention of the parties is clear, courts have no authority to torture the meaning of policy language to extend or defeat coverage that was never intended by the parties."). Therefore, we reverse the circuit court's grant of summary judgment.[2]

**REVERSED.**

**WILLIAMS, THOMAS, and MCDONALD, JJ., concur.**

---

[2] Because our resolution of the prior issue is dispositive, we decline to address the remaining issues on appeal. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (ruling an appellate court need not address remaining issues when its resolution of a prior issue is dispositive).