**Allen L. HARDESTER, Jr.; Barbara Hardester, Plaintiffs–Appellees,**

**v.**

**The LINCOLN NATIONAL LIFE INSURANCE COMPANY, administrator; Employers Health Insurance Company, Defendants–Appellants.**

No. 94–1172.

United States Court of Appeals, Fourth Circuit.

Argued March 7, 1995.

Decided April 18, 1995.

Affirmed by published per curiam opinion. Judge HAMILTON wrote a dissenting opinion, in which Chief Judge ERVIN, Judge RUSSELL, Judge WILKINSON, Judge LUTTIG, and Senior Judge PHILLIPS joined.

## OPINION

PER CURIAM:

Lincoln National Life Insurance Company and Employers Health Insurance Company appeal an order of the district court granting summary judgment for the plaintiff insureds in a dispute over health insurance coverage provided under an ERISA[1] welfare benefit plan. *Hardester v. Lincoln National Life Insurance Co.*, 841 F.Supp. 714 (D. Md.1994). A divided panel of this court reversed the judgment of the district court, *Hardester v. Lincoln National Life Insurance Co.*, 33 F.3d 330 (4th Cir.1994), but, on plaintiffs' suggestion, we vacated the panel decision and reheard the case en banc. Having considered the briefs and the arguments of the parties, we now affirm the judgment of the district court for the reasons stated in the dissent to the panel opinion. *Id.* at 337–40 (Hall, J., dissenting).[2]

*AFFIRMED.*

**ARGUED:** Bryan David Bolton, Shapiro & Olander, Baltimore, MD, for appellants. David Alan Titman, Ellicott City, MD, for appellees. **ON BRIEF:** Michael E. McCabe, Jr., Shapiro & Olander, Baltimore, MD, for appellants.

Before Chief Judge ERVIN, RUSSELL, WIDENER, HALL, MURNAGHAN, WILKINSON, WILKINS, NIEMEYER, HAMILTON, LUTTIG, WILLIAMS, and MICHAEL, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

HAMILTON, Circuit Judge, dissenting:

Appellants Lincoln National Life Insurance Company and Employers Health Insurance Company (the Appellants) appeal from the district court's grant of summary judgment in favor of Barbara and Allan J. Hardester, Jr. (the Hardesters) on their action to collect insurance benefits under a health insurance plan (the Plan) issued by the Appellants. *See Hardester v. Lincoln National Life Ins. Co.*, 841 F.Supp. 714 (D. Md.1994). A divided panel of this court reversed and remanded the case to the district court with

1. Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.*

2. Though their authority is not essential to our decision, we note that two cases decided after the panel heard argument in this case support today's result. *Hughes v. Boston Mutual Life Insurance Co.*, 26 F.3d 264, 268–69 (1st Cir.1994) (rule of *contra proferentem* precludes rejecting,

on summary judgment, plaintiff's contention that treatment is "for" a condition only if there is "some awareness on the part of the physician or the insured that the insured is receiving treatment for the condition itself"); *Pitcher v. Principal Mutual Life Insurance Co.*, 870 F.Supp. 903, 910 (S.D. Ind.1994) (expressly adopting analysis of *Hardester* panel dissent in strikingly similar case).

instructions to enter judgment for the Appellants. *See Hardester v. Lincoln National Life Ins. Co.* (*Hardester I* ), 33 F.3d 330 (4th Cir.1994). Subsequently, a majority of this court elected to hear the case *en banc*, thereby vacating the panel opinion. *See* Fed. R.App.P. 35. The *en banc* court affirmed the grant of summary judgment in favor of the Hardesters.

Following rehearing *en banc*, I remain firmly convinced that the district court's grant of summary judgment in favor of the Hardesters should be reversed and judgment should be entered in favor of the Appellants. Accordingly, I respectfully dissent for the reasons stated in the majority panel opinion in *Hardester I. See Hardester I*, 33 F.3d at 331–37. Concluding that *Hardester I* was properly decided, I would adopt it as the opinion of the *en banc* court.

The majority opinion only addresses two cases not addressed in *Hardester I: Hughes v. Boston Mutual Life Insurance Co.*, 26 F.3d 264 (1st Cir.1994), and *Pitcher v. Principal Mutual Life Insurance Co.*, 870 F.Supp. 903 (S.D. Ind.1994). *Hughes* involved the application of a "pre-existing condition" exclusion clause in a group health insurance plan. A University of Massachusetts employee who was insured under the plan brought an action against his insurer seeking benefits for the treatment of his multiple sclerosis (MS), after the insurer denied benefits based on the "pre-existing condition" exclusion clause. *Hughes*, 26 F.3d at 266–67.

The "pre-existing condition" clause in *Hughes* excluded coverage for a disability which was caused by or resulted from a pre-existing condition and which began in the first twelve months after the insured's effective date of coverage under the plan—the probationary period—unless the insured had received no treatment for the condition for six consecutive months after his effective date of coverage. *Id.* at 266. Under the plan, "treatment" was defined as " 'consultation, care or services provided by a physician including diagnostic measures and taking prescribed drugs and medicines.' " *Id.* at 266 (quoting plan). "Pre-existing condition" was defined as " 'sickness or injury for which

the insured received treatment within six months prior to the insured's effective date ['the pre-probationary period'].' " *Id.* (alteration in original) (quoting plan). Notably, unlike the Plan in the case before us, the plan in *Hughes* did not define the term "sickness." Hughes experienced a number of symptoms consistent with MS for which he received treatment during the pre-probationary period. At this time, the doctor prescribed medication for Hughes' symptoms but made no diagnosis of MS. After the pre-probationary period, Hughes was diagnosed with MS. Finding that Hughes had received treatment for his undiagnosed MS during the pre-probationary period, the district court granted the insurer's motion for summary judgment, and Hughes appealed. *Hughes*, 26 F.3d at 267.

Completely different from the case before us, the *Hughes* court found that the language of the "pre-existing condition" exclusion clause, including the term "sickness," was susceptible of more than one reasonable interpretation, and thus was ambiguous. *Id.* at 269–70. The *Hughes* court recognized that one reasonable interpretation would be that the clause does not require diagnosis to apply and another would be the opposite. *Id.* at 269. Applying the general contract rule that ambiguities are construed against the drafter, the *Hughes* court adopted, for purposes of summary judgment, the interpretation advanced by Hughes that the "pre-existing condition" clause, in order to exclude coverage, required *diagnosis* of the sickness during the pre-probationary period. *Id.* at 270. Because the evidence was undisputed that neither Hughes nor the physicians who treated his symptoms during the pre-probationary period was aware that he was being treated for MS, *i.e.*, Hughes' MS was undiagnosed, the *Hughes* court vacated the grant of summary judgment in favor of the insurer and remanded for further proceedings. *Id.*

*Hughes* is distinguishable from the case before us on two significant grounds, and thus does not support the majority's decision. First, the Hardesters have never argued that the pre-existing condition exclusion clause in the Plan was ambiguous. *See Hardester I*, 33 F.3d at 330–33. Second, the Plan defines

the term "sickness," thus avoiding any ambiguity as to whether diagnosis is required for the clause to apply. Accordingly, contrary to the majority's position, *Hughes* does not support its decision.

The second case that the *en banc* majority addresses in its opinion is *Pitcher v. Principal Mutual Life Insurance Co.*, 870 F.Supp. 903 (S.D. Ind.1994). I need not distinguish *Pitcher* because it expressly adopted the analysis of the dissent in *Hardester I*, which is sufficiently addressed in the majority opinion in *Hardester I* and on which I now rely as the reasoning for my dissent.

In sum, as is fully developed in *Hardester I*, the majority disregards the plain language of the Plan that reveals the pre-existing condition exclusion works to deny coverage in this case. While I am certainly sympathetic to Barbara Hardester's sickness, as a jurist, I am unquestionably charged with applying the law, and I must not allow sympathy to cloud my legal judgment.

Chief Judge ERVIN, Judge RUSSELL, Judge WILKINSON, Judge LUTTIG and Senior Judge PHILLIPS have joined this dissent.