Charles **SALVAGGIO,** Plaintiff,

v.

**TIME INSURANCE COMPANY,** Defendant.

C/A No. 0:07–cv–909–JFA.

United States District Court, D. South Carolina, Rock Hill Division.

May 8, 2008.

Nathaniel Bax and Robert H. Hoskins, Foster & Foster, L.L.P., Greenville, SC, for Plaintiff.

Walter D. Willson, Wells Marble and Hurst, PLLC, Ridgeland, MS, and James M. Saleeby, Jr., Aiken, Bridges, Nunn, Elliot and Tyler, P.A., Florence, SC, for Defendant.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

JOSEPH F. ANDERSON, JR., District Judge.

This matter comes before the court on the motion for summary judgment of defendant Time Insurance Company. The issues have been fully briefed, and the court heard oral argument on March 27, 2008. The material facts are not in dispute, and the determinative issue involves the construction and application of a preexisting condition clause contained in a Short Term Medical Certificate, Policy No. 7242492, issued to plaintiff by defendant. For the reasons set forth herein, the court grants defendant's motion for summary judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts are not in dispute, and the parties only disagree over application of the facts to the preexisting condition exclusion contained in the insurance policy. All of the pertinent incidents occurred within the month of August, 2006.[1] On August 2, 2006, plaintiff was seen by his treating physician, Dr. James Villier ("Villier"), for vertigo, vision problems, unsteady gait, and nausea. Villier noted that if plaintiff's symptoms did not improve, then a computed tomography ("CT") brain scan would be scheduled. One week later, plaintiff had a follow-up visit during which he indicated that his symptoms had alleviated but were still present. Another follow-up visit was conducted two weeks later, and a CT brain scan was scheduled.

On August 24, 2006, the CT brain scan was performed and showed abnormal results. Multiple tumors to the brain were detected that were consistent with metastases, which is cancer that originates elsewhere in the body and spreads to the brain.[2] The next day, August 25, 2006, plaintiff again visited Villier to discuss the brain scan results, and a chest x-ray was scheduled.[3] Notes to the visit state that plaintiff "has multiple areas that appear to be hyperdense metastases that could be related to melanoma or hemorrhagic metastases," and the assessment portion of the document lists "[a]pparent cerebral and cerebellar metastases," which refers to the likelihood of cancerous nodules that have spread from another area to certain locations within the brain.

On August 29, 2006, CT chest scan results were received and showed evidence of lung cancer. Subsequent biopsies confirmed that plaintiff had lung cancer that had spread to the brain. Regrettably, lung cancer that has progressed to this stage is incurable.

Plaintiff applied for the policy at issue on August 18, 2006. The initial effective date of the policy was September 1, 2006, but at plaintiff's request was moved to August 29, 2006.[4] The CT chest scan results were obtained, reviewed and discussed with a radiologist on the effective

---

1. However, office visit notes dated July 19, 2006 indicate that plaintiff was seen for back and leg pain issues, and that his wife presented a "note indicating concern regarding chronicity of symptoms."

2. Office notes to the August 24th CT scan results state "hyperdense melanoma versus hemorrhagic" and "no hydrocephalus and no shift." A statement providing that the patient had been informed is circled.

3. Office notes to the August 25th visit indicate: "Chest x-ray today.... Plan follow up after scan results and anticipate oncology referral."

4. Plaintiff requested the change in the effective date of the policy to ensure that there was no gap in coverage because his wife had been terminated from her employment and her group insurance coverage was ending.

date, but only the events prior to August 29, 2006 are at issue.

Plaintiff initiated this action in state court after defendant denied payment of medical benefits on the grounds that plaintiff's cancer was a preexisting condition. Defendant timely removed, and the current motion for summary judgment was filed on January 3, 2008. In the motion, defendant argues that summary judgment should be granted in its favor on plaintiff's breach of contract claim because coverage for plaintiff's insurance claims is precluded under a preexisting condition clause contained in the policy.[5] Defendant argues that the undisputed medical evidence from plaintiff's treating physicians and expert witnesses establish that the cancer was a preexisting condition under the terms of the policy, and, therefore, summary judgment should be granted in its favor.

In response, plaintiff argues that the policy language is ambiguous, and therefore coverage should be construed in his favor.[6] Plaintiff further argues that even if the preexisting condition clause is not ambiguous, there is a factual dispute as to whether his cancer constitutes a preexisting condition within the meaning of the policy.

## II. DISCUSSION AND ANALYSIS

### A. Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An insurance contract is construed by applying traditional principles of contract interpretation. *Schulmeyer v. State Farm Fire & Cas. Co.*, 353 S.C. 491, 579 S.E.2d 132, 134 (2003). "The cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language." *Id.* (citing *United Dominion Realty Trust, Inc. v. Wal–Mart Stores, Inc.*, 307 S.C. 102, 413 S.E.2d 866 (1992)).

### B. Analysis

#### 1. Ambiguity

■ Under South Carolina law, if the language of an insurance policy is unambiguous, the contract language alone determines the policy's force and effect, and each term within the policy must be given its intended purpose. *Dilmar Oil Co. v. Federated Mut. Ins. Co.*, 986 F.Supp. 959, 978 (D.S.C.1997) (citing *Torrington Co. v. Aetna Cas. & Sur. Co.*, 264 S.C. 636, 216 S.E.2d 547, 550 (1975)). If the terms of the insurance policy are ambiguous, then the policy must be construed liberally in favor of the insured. *Campbell, Inc. v. N. Ins. Co. of N.Y.*, 337 F.Supp.2d 764, 767 (D.S.C.2004) (citing *Diamond State Ins. Co. v. Homestead Indus. Inc.*, 318 S.C. 231, 456 S.E.2d 912, 915 (1995)). "A contract is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Hansen v. United Servs. Auto. Ass'n*, 350 S.C. 62, 565 S.E.2d 114, 116–17 (2002).

---

5. It is the court's understanding that the breach of insurance contract claim and request for attorney's fees are the only claims at issue because plaintiff indicated that he consents to dismissal of the bad faith claim asserted against defendant.

6. However, plaintiff does not cross-move for summary judgment on this issue.

■ The first page of the policy at issue provides: "NO RECOVERY FOR PRE-EXISTING CONDITIONS: No benefits will be provided during the term of this certificate for any Pre-existing Condition as defined in Your certificate." The policy defines a preexisting condition as: "A medical condition due to Sickness or Injury: For Which medical advice, diagnosis, care or treatment was received or recommended from a provider within the 1—year period immediately preceding the Effective Date of coverage, regardless of whether the condition was diagnosed or not diagnosed."

In response to defendant's motion for summary judgment, plaintiff argues that the preexisting condition exclusion is ambiguous, and therefore coverage should be construed in his favor. Plaintiff contends that because the cancer was not diagnosed until after the effective date of the insurance policy, then coverage was not precluded as a preexisting condition because no "medical advice, diagnosis, care or treatment" was received for cancer. Plaintiff's argument is premised on absence of the word "existence of symptoms" in the definition, and plaintiff cites to case law noting the difference between clauses excluding claims for conditions existing before the effective date of policy, as opposed to conditions that have actually been treated. *See Hughes v. Boston Mutual Life Ins. Co.,* 26 F.3d 264, 269 (1st Cir.1994); *Pitcher v. Principal Mutual Life Ins. Co.,* 870 F.Supp. 903, 907–08 (D.Ind.1994).

However, the plain language of the policy excludes coverage for medical conditions for which "medical advice, diagnosis, care or treatment was received or recommended" prior to the effective date or coverage, "regardless of whether the condition was diagnosed or not diagnosed." Based on the language contained in the policy, the court finds that the preexisting condition clause is not ambiguous and excludes coverage for conditions, diagnosed or undiagnosed, for which medical attention was received prior to the effective date of coverage. Therefore, the only issue raised by the motion is whether there exists a genuine issue of material fact as to whether plaintiff's lung cancer is a preexisting condition within the meaning of the policy.

2. Genuine Issue of Material Fact

The undisputed facts show that prior to the effective date of the policy the following events occurred: plaintiff sought medical advice for vertigo, unsteady gait, vision problems, and nausea; the results of a CT brain scan revealed the presence of brain tumors; and a chest x-ray was scheduled. On the effective date of the policy, a review of the chest scan results showed physical signs of plaintiff's lung cancer, and sometime after the effective date a diagnosis of lung cancer which had spread to the brain was confirmed.

In *Doe v. Northwestern National Life Insurance Co.,* the South Carolina Court of Appeals held that although diabetes was a preexisting condition within the meaning of the policy at issue, impotency caused by diabetes was not a preexisting condition precluded from coverage under the policy. *Doe v. Northwestern Nat'l Life Ins. Co.,* 292 S.C. 241, 355 S.E.2d 867, 869 (1987) (cited in *Anderson v. Golden Rule Ins. Co.,* 888 F.2d 319, 321 (4th Cir.1989)). The *Doe* court noted that although the impotency was a preexisting sickness, it was not excluded by the preexisting condition clause because no treatment was received or expenses incurred for the condition prior to the effective date of coverage. *Id.*

In *Haley,* the Fourth Circuit held that a preexisting condition exclusion to disability benefits applied where the undisputed facts showed that plaintiff suffered from, and sought medical advice for, the very condition that later worsened and resulted

in his disability. *Haley v. Paul Revere Life Ins. Co.*, 77 F.3d 84, 90 (4th Cir.1996). However, in *Hardester*, the Fourth Circuit held that a preexisting condition clause did not apply to cancer detected after the effective date of policy where medical treatment received prior to the effective date was for an unrelated condition that fortuitously revealed cancer which otherwise could not have been detected by the physician. *Hardester v. Lincoln Nat'l Life Ins. Co.*, 33 F.3d 330, 338 (4th Cir.1994) (Hall, J., dissenting), *vacated on reh'g*, 52 F.3d 70 (4th Cir.1995) (en banc) (adopting panel dissenting opinion); *see also Pitcher v. Principal Mut. Life Ins. Co.*, 93 F.3d 407 (7th Cir.1996) (holding that cancer discovered after effective date was not a preexisting condition because treatment or service received before effective date was for an unrelated condition).

██ In this case, plaintiff sought and received medical advice and attention for a manifest condition causally related to and resulting from lung cancer which had spread to the brain. Defendant argues that the evidence shows that plaintiff was being seen for cancer prior to the effective date because plaintiff's treating physician states in his deposition that as of August 25, 2006, he believed that he was in fact treating plaintiff for some form of cancer. In response, plaintiff argues that because the treating physician stated that numerous medical possibilities, including the documented likely condition of cancer, could have caused plaintiff's symptoms, a factual dispute exists as to whether Villier was in fact treating plaintiff for cancer prior to the effective date.

Although plaintiff focuses on whether or not the treating physician was actually treating plaintiff for cancer prior to the effective date of the policy, the policy's definition of a preexisting condition applies to a condition for which medical advice or treatment is received, whether diagnosed or not, and is not dependent on the confirmed knowledge of the plaintiff, or the medical provider, at the time of treatment. In this case, plaintiff initiated medical attention, follow-up visits were performed, and a final diagnosis revealed cancer. After reviewing the brain scan results on August 25, 2006, plaintiff's treating physician stated that his "working or provisional impression at the time" was that cancer present somewhere else in the body had spread to the brain. Notes taken on that date state "[c]hest x-ray today" and "[p]lan follow up after scan results and anticipate oncology referral." Furthermore, the brain tumors were in fact causally linked to, and caused by, the lung cancer. Even if the court were to accept plaintiff's argument that it is possible that his various symptoms were in fact caused by some other condition, or that the discovery of cancer was the fortuitous result of an unrelated medical examination, plaintiff has produced no evidence in support of this argument other than the assertion that a reasonable jury could so find. Although a hapless result, the court is constrained to find that the undisputed facts show that plaintiff's cancer is a preexisting condition within the language of the policy.

### III. CONCLUSION

For the reasons discussed herein, the court finds that the insurance policy issued by defendant is not ambiguous and holds that as a matter of law coverage for plaintiff's claims is precluded because plaintiff's cancer was a preexisting condition within the meaning of the policy. Therefore, defendant's motion for summary judgment is granted, and plaintiff's claims against defendant are dismissed.

IT IS SO ORDERED.